## WARREN HARRINGTON v. THE STATE.

### *No. 24. Decided March 11.*

1. **Theft — Venue — Animals Carried from one County into Another — Former Conviction.**—Where a number of cattle were stolen in other counties at different times and places, but were all driven together into the county of W., and in this latter county the thief had been convicted of the theft of one of the animals, and on his trial for the theft of another he pleaded this former conviction in bar of the second prosecution, basing his plea upon the theory that where animals are thus stolen in one county and taken into another county a new theft is committed in this latter county, and that having been driven together into the said latter county, the act of driving together made the new theft in W. County one and the same transaction as to all the animals, and that therefore a conviction as to one in W. County was a bar to the prosecution for any of the others in that county: *Held*, that the rule invoked is but a fiction of the common law, and of our statute, to settle the question of venue in cases of larceny, and can not be made to apply for the purpose of avoiding prosecutions for offenses which in their nature and origin were and necessarily are separate and distinct crimes. See the opinion of Hurt, Presiding Judge, for a discussion in extenso of the subject.

2. **New Trial.**—On a motion for new trial, if it be shown by an application for continuance for absent testimony that sufficient diligence was used, that the testimony was consistent with the defensive evidence, was probably true, and that had it been adduced an acquittal would have been reasonable, *held*, that a new trial should have been awarded.

APPEAL from the District Court of Wilbarger. Tried below before Hon. G. A. BROWN.

The indictment in this case charged appellant, Warren Harrington, jointly with Tom Sanders, alias Tom Gann, Tass Harrington, and E. D. Harrington with the theft of one head of cattle, the property of one George E. Cowden, in Wilbarger, County, Texas, on or about the 15th day of July, 1892.

There was a severance, and appellant was alone placed upon trial, which trial resulted in his conviction, the punishment being assessed at two years in the penitentiary.

The following statement of the case is taken from the brief of appellant, viz.:

In June, 1892, E. D. (Deve) Harrington, a brother of appellant, was employed by one Runnells, a ranchman in Wilbarger County, Texas, to drive a herd of about 2000 cattle in the C brand from Andrews County, adjoining Midland, to Sugg's ranch, in the Indian Territory, a distance of over 300 miles. Appellant and Tass Harrington, one Perry, and one Stoops and others, were to accompany Deve Harrington in the capacity of hired hands. The herd of 2000 head was delivered to Deve Harrington about the 25th of June, and he started to the Indian Territory, their destination, with them. After a day or two's journey, the herd was joined by Perry Mays and Jeff Mays, and a day or two later by one Williams and one Nations, who accompanied the herd through; en route, near the line of Haskell, Stonewall, and Fisher Counties, one Tom Gann, alias Tom Sanders, also joined the herd, and accompanied it through to its destination.

The route of the cattle was through the counties of Andrews, Borden, Scurry, Fisher, Haskell, Knox, and Wilbarger, crossing the Fort Worth and Denver Railway at the town of Harrold, in the last named county. At this point some 25 head of cattle, in various marks and brands other than the C brand, were cut out from the main herd and left in a pocket (a tract of land enclosed all around except two lanes running into it), and all the outfit proceeded with the herd, except Nations and Williams, who had dropped out the previous evening at Harrold, and Tom Sanders (or Gann) and Tass Harrington, who did not proceed with the herd after the 25 head were cut out, but caught up with it in the Indian Territory about 9 o'clock at night of the same day. On the day the 25 head were cut out at Harrold, two persons answering the description of Tass Harrington and Tom Gann engaged pasturage from one Smith, near Harrold, for 25 head of cattle, and on the same day put them in the pasture. The animal for the theft of which defendant was convicted herein was one of the 25 head put in Smith's pasture; its range was in Andrews County, or some adjacent county. Of the other 25 head, the range of some two or three was in Midland or adjoining counties; several ranged in Fisher County, some in Haskell, Stonewall, Throckmorton, and Knox counties.

Defendant's counsel asked the court to instruct the jury, that notwithstanding the animals may have been actually taken at different times and places, yet if they were brought into Wilbarger County at the same time, then there was but one offense in Wilbarger County, and therefore that defendant in this, the second, case should be acquitted; which instruction was refused by the court.

*Williams & Stephens*, for appellant.—The defendant relied on a former conviction for the theft of a steer belonging to George Cowden, which

steer was found in the same herd at the same time, and was brought into Wilbarger County in the herd with the Earnest steer, for which defendant is prosecuted in this case.

When property is stolen in one county and carried into another county by the offender, he may be prosecuted in either county. But where several cattle are stolen in one county from different owners and at different times, if such animals are put into one herd, and carried by the offenders into the county of prosecution at the same time and place, and by the same offenders, such taking would constitute but one offense in the county of the prosecution, for the reason that the act of carrying the stock into such county is one and the same physical act, and the venue in said county is fixed by only one wrongful act (viz., bringing the cattle into the county of the prosecution), and the conviction for theft of one of such cattle would bar any further prosecution. Roth v. The State, 10 Texas Ct. App., 27; Dixon v. The State, 15 Texas Ct. App., 480; Gage v. The State, 22 Texas Ct. App., 123; West v. The State, 28 Texas Ct. App., 1.

*Cockrell & Tillett*, also for appellant.—Our contention is, that if appellant was guilty at all, he fraudulently took from the possession of its owner in Wilbarger County the animal in controversy, with intent, etc.; i. e., that he was guilty of theft in Wilbarger County, and that this theft was the identical transaction for which he was already convicted; i. e., he stole this animal and the animal for the theft of which he was already convicted at the same time and place in Wilbarger County, by bringing both into the county at the same time and driving them away. To this proposition it is no answer to say, that if in fact the animals were stolen at different times and in different counties, that defendant was subject to be indicted and convicted in each of the several counties in which the thefts were committed.

So far as a diligent search on our part discloses, the precise question now presented has never been passed on anywhere, nor is it raised in the text books. It is then purely a question of reason and principle, and we hope to show that, thus starting out, we are correct in our conclusion. Article 216, Code of Criminal Procedure, provides, that where property is stolen in one county and the offender carries it into another county, he may be prosecuted either in the county of the taking or in the county into which he carries it. This was the rule at common law in the absence of a statute. 2 Russ. on Crimes, *328, et seq.; Whart. Crim. Law, 9 ed., sec. 928, et seq.; Roth v. The State, 10 Texas Ct. App., 27.

The Texas statute is merely declaratory of the common law (Dixon v. The State, 15 Texas Court of Appeals, 480), and it follows, therefore, the offense will be construed as at common law. In Gage v. The State, 22 Texas Court of Appeals, 128, speaking of the common law doctrine,

it is said: "It is this doctrine, doubtless, which gave rise to our statute—supra, Code of Criminal Procedure, article 216."

In Dixon v. The State, 15 Texas Court of Appeals, 480, the statute is, in effect, construed as merely a declaration of the common law rule. This much may then be considered as not a subject of controversy. What consequences then follow? That the prosecution is for a theft in the very county where the indictment is presented. It is on this reasoning, that if a thief steals property in county A and carries it into county B, he may be prosecuted in county B on an indictment charging the theft in county B, and not in the county of the original taking. And why? Because the theft is in fact committed in county B, and it is for that theft, and not the theft in county A, that he is prosecuted. The theft in county B must also be shown to be a complete theft in that county, and if the proof falls short of this, the offender is entitled to an acquittal, however clearly the theft in county A is shown, because he is not being tried for the offense committed in A County; that is a distinct offense. West v. The State, 28 Texas Ct. App., 1.

Justice White, in Gage v. The State, 22 Texas Court of Appeals, 127, after quoting decisions of this kind, when the prosecution is not for the original offense, says: "The idea that in cases of this description the crime is considered as actually committed in the county where the offender is found with the goods, is distinctly carried out in Rex v. Parker, 1 Russell, 124. An indictment was found in Hertfordshire for stealing four live tame turkeys; and it appears that they were stolen in Cambridgeshire, killed there, and carried dead into Hertfordshire; and upon the point being heard, the judges held, that though the carrying into Hertfordshire constituted a larceny, yet it was a new larceny there, and a larceny of dead turkeys and not of live ones." Further, in the same decision, referring to our statute on the question of venue, it is said: "But under this statute of ours, it has been held, that where a party is prosecuted in a county other than that in which the theft is committed, a complete offense must be shown in the county where the conviction was had."

The principle on which these decisions, both at common law and under the statutes, is based, is that in truth the theft is actually committed in the county of the prosecution; there is the fradulent asportation, the want of the owner's consent, the intent to appropriate to the thief's own benefit, and the property is taken from the possession of the owner, it being at all times constructively in his possession. What more is necessary to constitute theft in the county to which the thief has brought the property? As the question is a new one, and you must decide it purely on principle and reason, we beg to call your most careful attention to 1 Bishop on Criminal Law, sections 137–143; and for a bit of pleasant, but excusable, conceit, see note 1, section 140. Here the author is discussing the prosecution in one State of offenses committed in another State, show-

ing the analogy between the principle there involved and in cases of larceny in one county and the removal of goods to another. Also, for the principles here under discussion, see 1 Bishop's Criminal Procedure, sections 54–60. We believe an examination of the above and numberless other authorities that might be cited, will satisfy you beyond controversy that where an offender is prosecuted in a county into which he has brought stolen goods originally taken in another county, he is in no sense prosecuted for the original taking in the latter county, but for the new larceny in the county into which he has brought the stolen property, each step taken by him in that county being a fresh larceny.

*R. L. Henry*, Assistant Attorney-General, for the State.

HURT, PRESIDING JUDGE.—Appellant was tried and convicted of the theft of one head of cattle, the property of George E. Cowden.

The trial was in Wilbarger County. In the same county appellant had been convicted for the theft of one head of cattle, the property of some other person than George E. Cowden. The cattle were not taken in Wilbarger County, but in other counties of this State, and then carried into Wilbarger County together, and at the same time. The original thefts were not one transaction, the cattle being taken at different times and places. But as they were carried into Wilbarger County together, by one act, counsel for appellant contend, that having been convicted once for this act, he can not legally be convicted again in Wilbarger County, and pleaded the first conviction as a bar to this prosecution.

The contention of appellant is, that at common law theft is committed in every county through which or into which the stolen property is taken, and that our statute is not merely for the purpose of providing the rule of venue in cases of this kind, but it is declaratory of the common law, and that the jurisdiction or venue in Wilbarger County is sustained upon the ground that when appellant carried the cattle into Wilbarger County he committed another theft, a fresh theft, distinct from that committed by him in the first taking. The decisions of this court support this theory, and if they be correct, counsel's position is impregnable. Dixon v. The State, 15 Texas Ct. App., 480; Gage v. The State, 22 Texas Ct. App., 128.

The ground upon which this theory is based is this: That as the right of property, as well as the right of possession, remained all the time in the owner, and as the possession of the thief is the possession of the owner, so long as the thief remains in possession of the property, every time he carries it into another county he commits a fresh theft. This doctrine is presented and discussed under three phases: first, when the property is stolen in a foreign country and brought into a State; second, when stolen

in one State and carried into another; and third, when stolen in a county and carried into another county of the same State.

In England, if property be stolen in a foreign country and is brought into her kingdom, her courts do not take jurisdiction of the offense. But under the same state of facts (without statute) several States of this Union do. But the weight of authority is against the jurisdiction.

Again, when property is stolen in one State of the Union and taken into another, some of the States, in the absence of a statute, assume authority, try, convict, and punish the thief, holding that the States of the Union occupy the same relation to one another as do the counties in England. On the other hand, under the last state of case, the weight of authority is against the jurisdiction, holding that in regard to this matter the States of the Union bear the same relation to each other as foreign States.

We have given a condensed history of this legal fiction. When we look into the reasoning of the courts, we find that whether the property be stolen in a foreign country or in a State of this Union, and is carried into another State, it is the same. It is founded upon a fiction, pure and simple, namely, that theft, a fresh larceny, is committed in every county through which or into which the thief carries the stolen property; and we say, if this fiction be true in fact, the courts are correct which hold that where the property has been stolen in a foreign country and brought into a county of any State by the thief, the courts of such a State should prosecute to conviction the thief. If, when the thief brings the stolen property into a county of a State, he commits theft, why is it necessary to inquire into the laws of another State to ascertain whether he had committed theft in that State of the same property? Prove by the owner and the circumstances that the accused had taken his property fraudulently, without his consent, etc., and then prove that he had brought it into a county in Texas, and the case is made. Why? Because theft would be complete in such county if the property be stolen anywhere in the world, if in fact the thief commits a fresh theft by bringing the property into such county.

We deny, unhesitatingly, that a mere change of place by a thief while he remains in possession of the stolen property constitutes a new taking of the property, either as matter of fact or law. Suppose in fact and law he would be guilty of a fresh theft. What are the logical consequences? It is the duty of the courts of this State to prosecute to conviction all thefts, and when a theft is committed the thief has no legal right to complain if he be convicted therefor. He has the right, the legal right, to object to being twice prosecuted for the same offense, but the State has the right to convict him for every distinct theft he may commit. If, therefore, he commits a fresh—a distinct—theft when he carries the stolen property into or through other counties than that of the origi-

nal taking, he should be punished for each. To illustrate: A steals a horse in Lamar County, rides him through Fannin and Grayson, and lands with him in Dallas County. Now, under this fiction, he would be guilty of four distinct thefts of the same horse—one in Lamar, one in Fannin, one in Grayson, and one in Dallas—and should be convicted for each. But at common law, where this fiction had its origin, there could be but one conviction. Nor will it be contended that there could be but one conviction in Texas, or any State in which this fiction is recognized. This fact demonstrates that this doctrine is sheer fiction, invented by the common law to settle the question of venue in cases of larceny, and that -the purpose of our statute is the same. The plea of former conviction was without merit.

We have carefully considered the facts in this case with reference to the motion for a continuance. The diligence was sufficient. The testimony of the absent witnesses was not improbable. It was consistent within itself, and was not rendered by the evidence for the prosecution improbable; and if it had been placed before the jury in this case an acquittal would have been reasonable. For the error indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Judges all present and concurring